SASSAMAN *v.* WELLS.

1. PARENT AND CHILD—CONTRACTS—MEDICAL SERVICES—LIABILITY
   OF FATHER FOR NECESSARIES.

   Neither express nor implied authority to pledge his father's credit for medical services is vested in a minor son 19 years of age, who resided away from home at another city, attending school there against the consent of his parent, who contributed nothing to his support, and had no knowledge of the son's illness.[1]

2. SAME.

   It is necessary to show, in order to charge the parent, that some duty had been neglected or some exigency or peril of the son existed and that he was at a distance from home so that information could not be speedily conveyed to his parent.

3. CONTRACTS—PHYSICIANS AND SURGEONS—MEDICAL ATTENTION.

   That a father may be chargeable with necessary medical attention furnished to his minor child, there must be either an express promise to pay or circumstances from which a promise can be implied, some omission of duty or special exigency rendering the performance of service reasonable and proper.

Error to Eaton; Smith, J. Submitted November 13, 1913. (Docket No. 112.) Decided December 20, 1913.

Assumpsit in justice's court by Franklin W. Sassaman against William R. Wells for medical services. Judgment for plaintiff on appeal to the circuit. Defendant brings error. Reversed; new trial refused.

---

[1] As to the liability of a parent for necessaries furnished minor child who is living away from parent's home, see note in 40 L. R. A. (N. S.) 488.

*R. A. Colwell* and *George Huggett,* for appellant.

*J. C. Nichols* and *Lyman H. McCall,* for appellee.

OSTRANDER, J. The subject-matter of the controversy is a physician's bill of $59 for professional services rendered to defendant's minor son, 19 years of age, in the month of October, 1911. The particulars of the demand are almost daily services from October 2d and including October 25th, with an item of $20 for an operation on October 21st. Begun in justice's court, the cause was appealed to the circuit court, and the judgment of the latter court is reviewed here on error. Defendant pleaded the general issue. He moved at the conclusion of plaintiff's proofs for an instructed verdict and renewed the motion when defendant's proofs were concluded. Both motions were denied. Two questions were submitted to the jury:

(1) Was defendant's son emancipated when the debt was contracted?
(2) Did the plaintiff charge the account to the son or to his father?

These the jury answered in plaintiff's favor. A new trial was refused. Appellant has not set out in the brief, separate from argument, the errors relied upon, the questions involved, and the manner in which they are raised. Supreme Court Rule 40. But it appears that two principal contentions are made:

(1) That the testimony presented no issue of fact for the jury, and, if it did, then (2) that in charging the jury and in refusing to charge as requested by defendant errors of law were committed.

The value of plaintiff's services is not questioned in the pleadings, though the testimony of the son is that they were not helpful. His ailment was of a private nature, his condition one which he would naturally desire to conceal from his parents. He lived in Wood-

bury, Eaton county, and was attending school in Charlotte, in the same county.

It is undisputed that from April 3, 1911, until September 9, 1911, the son was employed by his father, who paid him $7 weekly and gave him his board and washing; that he settled with him when the son determined, contrary to his father's wishes, to go away to school; that while the son was absent in Charlotte he contributed nothing to his support, did not know of his illness, and consequently did not know that the plaintiff was attending him; that the son returned home in October, 1911, sick, and was treated by the family physician for six weeks, after which time, and until he became of age, he was employed by his father according to their previous arrangement. It does not appear that the father knew that plaintiff had a demand against him until notified by an attorney, although plaintiff testified that he had himself previously written to him.

Plaintiff testified, and his testimony upon this point is not disputed, that he charged the account upon his books to the father. He further testified that he extended the credit to the father, to whom the son told him to make the charges, that he told the son that his father would have to pay if he did not, that the son did not pay, and therefore he looked to the father. "I had strict orders from the patient," he says, "he would pay it; that he didn't want this known to the father." He denies that the son left with him a cornet as security for payment, but admits it was left with him. The son testified, in substance, that he did not inform the plaintiff that he ·had been emancipated, that he did tell him his age, and who his father was, but did not tell him his father would pay. On the contrary, he testified that he told plaintiff he himself would pay and that plaintiff had repeatedly demanded pay of him. He also testified that the cornet was left with plaintiff upon his demand for some

security before performing a surgical operation. This is the substance of the material testimony.

It is manifest that the son had neither express nor implied authority to pledge his father's credit. The plaintiff made no express contract with the father, the defendant, nor were the services rendered under circumstances, such as the knowledge of the father, from which, generally, a promise to pay for them would be implied. If defendant is liable, it is because of some general moral or legal duty to provide necessaries for his son, failing in which a stranger might supply them at his expense. *Tyler* v. *Arnold,* 47 Mich. 564 (11 N. W. 387). See *Freeman* v. *Shaw,* 173 Mich. 262, 266 (139 N. W. 66). There was some evidence of the real need for medical services, none of a failure of duty on the part of the father. Nor was there any exigency, such as the imminent peril of the son and his distance from home, to take the case out of the rule that parental duty must be neglected before a stranger may supply what the parent ought to supply, at the expense of the parent.

We may take notice that over the few miles lying between Woodbury and Charlotte information could have been speedily conveyed to the father.

The true rule is well stated in 29 Cyc. pp. 1608, 1609, where it is said:

"It is a necessary consequence of the duty to support the child that the parent may in a proper case be held liable for necessaries furnished to the child by a third person; but in order to hold the parent liable there must be either an express promise to pay or circumstances from which a promise can be implied, some clear and palpable omission of duty on the part of the parent in not furnishing necessaries to the child, or some special exigency rendering the interference of such person reasonable and proper."

We are of opinion, therefore, that, without considering whether the son had been emancipated, or

whether plaintiff intended to hold defendant responsible, the liability of defendant is not established, and the jury should so have been instructed.

The judgment is reversed, and no new trial will be granted.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, KUHN, STONE, and BIRD, JJ., concurred.